NICK PEREZ,

    Plaintiff,

    v.

SAKS & COMPANY, et al.,

    Defendants.
_____/

No. C 14-2512 PJH

**ORDER GRANTING MOTION TO REMAND**

Plaintiff Nick Perez's motion to remand came on for hearing before this court on August 13, 2014. Plaintiff Nick Perez ("plaintiff") appeared through his counsel, Jill Parker. Defendant Saks & Company ("defendant") appeared through its counsel, Jennifer Zargarof. Having read the papers filed in conjunction with the motion and carefully considered the arguments and relevant legal authority, and good cause appearing, the court hereby GRANTS plaintiff's motion to remand as follows.

## BACKGROUND

Plaintiff filed this putative class action in San Francisco Superior Court on April 24, 2014, alleging that defendant failed to pay him and other employees all minimum and overtime wages, failed to provide meal and rest periods, and "otherwise failed to treat them in the manner required by California wage and hour laws." Plaintiff seeks to represent a class of "all current and former California-based hourly-paid or non-exempt individuals employed by any of the defendants within the state of California at a 'Saks Fifth Avenue' store at any time during the period from four years preceding the filing of this complaint to final judgment."

The complaint asserts ten causes of action: (1) unpaid overtime, (2) unpaid meal period premiums, (3) unpaid rest period premiums, (4) unpaid minimum wages, (5) final

wages not timely paid, (6) wages not timely paid during employment, (7) non-compliant wage statements, (8) failure to keep requisite payroll records, (9) unreimbursed business expenses, and (10) violation of Cal. Bus. & Prof. Code § 17200.

Defendant removed the case to this court on May 30, 2014, based on this court's alleged jurisdiction under the Class Action Fairness Act ("CAFA"). On June 12, 2014, plaintiff filed the present motion to remand, arguing that defendant had not established that CAFA's $5,000,000 amount in controversy requirement had been met.[1]

## DISCUSSION

A.  Legal Standard

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 7–8 (1983) (citation omitted). See also 28 U.S.C. § 1441. However, federal courts are courts of limited jurisdiction. See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).

Accordingly, the burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal, and the removal statute is construed strictly against removal jurisdiction. Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004). See also Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus, 980 F.2d at 566.

CAFA provides that district courts have original jurisdiction over any class action in which (1) the amount in controversy exceeds five million dollars, (2) any plaintiff class member is a citizen of a state different from any defendant, (3) the primary defendants are

---

[1] Plaintiff also argues that defendant has failed to establish diversity of citizenship between the parties, but as stated at the hearing, the court finds that the declaration of Meredith Fogel is sufficient to establish that defendant is a citizen of New York.

2

not states, state officials, or other government entities against whom the district court may be foreclosed from ordering relief, and (4) the number of plaintiffs in the class is at least 100. 28 U.S.C. §§ 1332(d)(2), (d)(5). Further, "under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 685 (9th Cir. 2006).

The Ninth Circuit has held that if it is "unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," a "preponderance of the evidence" standard applies. Guglielmino v. McKee Foods, Inc., 506 F.3d 696, 699 (9th Cir. 2007) (citing Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996)). In this case, the parties agree that the "preponderance of the evidence" standard applies.

B.  Legal Analysis

Defendant's notice of removal presents two alternative calculations of the alleged amount-in-controversy (not including attorneys' fees): either $10,916,992 or $7,884,755.[2] Defendant reaches these amounts by making two different assumptions regarding its violation rate for the meal and rest period claims. According to defendants' calculations, if each class member missed a meal or rest period every week, then the amount in controversy would be $10,916,992; whereas if each class member missed a meal or rest period every other week, then the amount in controversy would be $7,884,755. See Dkt. 1 at 7-8.

In his motion, plaintiff pointed out that defendant's calculations did not account for the fact that not all employees worked shifts that were eligible for meal and/or rest periods, nor did they account for vacations or other leaves of absences, when employees may not have worked at all during a given workweek. In its opposition, defendant presented "updated" amount-in-controversy calculations that included only workweeks where an employee worked more than 30 hours (thus guaranteeing that the employee was at least

---

[2] Defendant's calculations account for only four of the ten asserted causes of action (missed meal periods, missed rest periods, inaccurate wage statement penalties, and waiting time penalties).

3

eligible for rest periods, if not meal periods).  Defendant's updated calculations assume one missed meal or rest period every other week, and result in an amount-in-controversy (not including attorneys' fees) of $6,624,638.  See Dkt. 12 at 29.

Defendant attempts to justify its assumption of one missed meal or rest period every other week by arguing that the complaint "does not limit the frequency" of those alleged violations, thus, entitling defendant to assume a 100% violation rate.  Defendant emphasizes that, while it "could have inferred a 100% violation rate," it instead conservatively assumed just one missed meal or rest period every other week.  Defendant cites a number of cases supporting the assumption of a 100% violation rate, including one from this court.  See Andersen v. The Schwan Food Co., 2013 WL 3989562 (N.D. Cal. Aug. 2, 2013).

However, in Andersen, the court specifically noted that "cases allowing defendants to rely on unsupported assumptions of 100% violation rates improperly shift the burden to plaintiff to refute speculative assertions of jurisdiction and establish that there is no jurisdiction," and found that an assumption of a 100% violation rate was supported only where plaintiff alleged a policy of failing to provide meal and rest periods.  Id. at *3, 5 ("Andersen alleges in the complaint that, as a policy, Schwan failed to provide RSRs with the required meal/rest period").

In contrast, the complaint in this case does not allege such a policy.  The complaint alleges that employees "were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty minutes and/or rest period," and that "defendants required plaintiff and other class members to work four (4) or more hours without authorizing or permitting a ten (10) minute rest period per each four (4) hour period worked."  Complaint, ¶¶ 62, 63, 72.  While the complaint does allege that the alleged violations were committed "willfully" and "intentionally," the complaint does not allege that defendant had a uniform policy that prevented the class members from taking any meal or rest periods.

4

Other courts in this district have addressed this issue, and have rejected assumed violation rates for missed meal/rest periods even when the defendant assumed something less than a 100% violation rate. For instance, in Allen v. Utiliquest, LLC, the court held that "[d]efendant's assumption that putative class members missed one meal break during each of the 54,458 workweeks within the class period does not have a factual basis" in the complaint, as plaintiff did "not allege any facts quantifying the meal periods defendant failed to provide." 2013 WL 4033673, at *5 (N.D. Cal. Aug. 1, 2013). Similarly, in Ruby v. State Farm Gen. Ins. Co., the court rejected an assumed violation rate of one missed meal period per week, as the complaint's allegations "state only that the putative class members missed some breaks, without providing any frequency." 2010 WL 3069333, at *4 (N.D. Cal. Aug. 4, 2010). The court also notes the striking similarity between the complaint's allegations in Ruby and the complaint's allegations in this case. Compare Ruby at *4 with Complaint (Dkt. 1, Ex. 3) at ¶ 63.

The court finds the reasoning of Allen and Ruby persuasive, and adopts it here. While defendant did assume less than a 100% violation rate, its assumed rate still lacks any support in the complaint or in any summary judgment-type evidence presented in opposition to the remand motion. Thus, the court cannot accept defendant's calculations as to the amount in controversy for plaintiff's missed meal period and missed rest period claims.

Defendant's calculations as to the amount in controversy for inaccurate wage statement penalties and waiting time penalties are based on the alleged frequency of missed meal/rest periods. In other words, defendant assumes that each class member missed a meal or rest period every other week (i.e., every pay period), and thus, assumes that every wage statement was inaccurate, and that every terminated class member is owed money for missed meal/rest periods. Because the court cannot accept defendant's calculations regarding missed meal/rest periods, it cannot accept its calculations for wage statement and waiting time penalties, as those penalties are derivative of the meal/rest

5

period claims. As a result, the court does not reach the issue (raised by plaintiff in his reply, and further addressed in defendant's sur-reply) of whether wage statement and/or waiting time penalties are even available when based solely on missed meal/rest periods.

Defendant also includes estimated attorneys' fees in its calculation of the amount in controversy, even though it argues that the $5,000,000 threshold is met even without including attorneys' fees. Where the underlying law provides for the payment of attorneys' fees, the amount of fees is included in calculating the amount in controversy for CAFA jurisdiction. Guglielmino, 506 F.3d at 700 (citing Galt v. Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998)). Defendant argues that a reasonable estimate for attorneys' fees is 25 percent of damages. Irrespective of whether 25 percent of damages is a reasonable amount for attorneys' fees in this case, defendant has failed to provide supported calculations for any of the causes of action in this case. Thus, any calculation of attorneys' fees would necessarily be based upon the unsubstantiated assumptions underlying defendant's other calculations.

## CONCLUSION

Because defendant's estimate of the amount in controversy is based on assumptions that are not supported by the complaint, the court finds that defendant has not met its burden to show, by a preponderance of the evidence, that the amount in controversy exceeds $5,000,000. Accordingly, plaintiff's motion to remand is GRANTED. And as stated at the hearing, defendant's motion to file a sur-reply is GRANTED.

Because the case is remanded, the court does not reach the merits of plaintiff's motion to strike, and DENIES it as moot.

The Clerk shall **REMAND** this case to the Superior Court for the City and County of San Francisco.

**IT IS SO ORDERED.**

Dated: August 14, 2014

PHYLLIS J. HAMILTON
United States District Judge